# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| DEBRA C. GOLD,<br><br>         Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | 2:17-cv-02155-RFB-VCF<br><br>**REPORT AND RECOMMENDATION** |

This matter involves Plaintiff Debra C. Gold's appeal from the Commissioner's final decision denying her social security benefits. Before the Court is Gold's Motion for Reversal or Remand (ECF No. 18) and the Commissioner of Social Security's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (ECF No. 19 & 20). For the reasons stated below the Court recommends denying Gold's motion to reverse or remand and granting the Commissioner's motion to affirm.

## STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). 42 U.S.C. § 405(g) authorizes the district court to review final decisions made by the Commissioner of Social Security.

The district court will not disturb an Administrative Law Judge's ("ALJ") denial of benefits unless "it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation omitted). When reviewing an ALJ's decision, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence means, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is defined as "more than a mere scintilla but less than a preponderance" of evidence. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation omitted).

If the evidence could give rise to multiple rational interpretations, the court must uphold the ALJ's conclusion. *Burch*, 400 F.3d at 679. This means that the Court will uphold the Commissioner's decision if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision "even if the evidence preponderates against" it).

## DISCUSSION

### I. Factual Background

The ALJ applied the five step sequential analysis pursuant to 20 C.F.R § 404.1520. On December 20, 2013, Gold applied for widow's insurance benefits pursuant to Title II of the Social Security Act. The ALJ determined that Gold suffered from a severe combination of impairments including cervicalgia, status post history of cervicalgia, status post history of cervical laminectomy, asthma and inflammatory arthritis. (AR 21[1]). The ALJ examined relevant medical evidence including opinions of state agency physicians, Dr. Pastora Roldan, Ph.D., Dr. R. Torigoe, Ph.D., Dr. Jon Arnow, Dr. Dmitriy Kosyagin, Dr. Jason Garber, and treatment records from Southwest Medical Associates, and Summerlin Hospital. The ALJ found that Gold has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)

---

[1] AR signifies a citation to the administrative record.

consisting of lifting or carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for up to 6 hours in an 8-hour workday; and sitting for up to 6 hours in an 8-hour workday. The ALJ determined that Gold can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, but never climb ropes, ladders or scaffolds.  She is limited to frequent overhead reaching with her bilateral upper extremities.  Due to asthma, she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  Plaintiff is not able to perform work at unprotected heights or around dangerous machinery.  (AR 23-24).

Gold disagrees with the ALJ's determination that she is not disabled because the ALJ committed reversible error by improperly considering the testimony of Gold.  (ECF No. 18 at p. 3).

The Commissioner argues that the ALJ fairly and accurately summarized the testimonial evidence of record and that the decision is supported by substantial evidence and free from reversible legal error.

***I. Whether the ALJ articulated clear and convincing reasons for rejecting Gold's testimony?***

If the Commissioner decides to discount the claimant's testimony regarding his or her subjective symptoms, the Commissioner must engage in a two-step analysis before finding the claimant's testimony lacks credibility.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted).

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  An ALJ may consider a

claimant's reputation for truthfulness and inconsistencies in the claimant's testimony when determining credibility. *Burch*, 400 F.3d at 680. However, this court cannot affirm an agency's decision on a ground an agency did not invoke in making its decision originally. *See Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

The ALJ correctly applied the two-step procedure that is required to discount a claimant's testimony. (*See* AR 21). First, the ALJ identified an underlying medically determinable impairment presented by claimant: cervicalgia, status post history of cervicalgia, status post history of cervical laminectomy, asthma and inflammatory arthritis. Second, the ALJ evaluated the intensity, persistence, and limited effects of Gold's symptoms. The ALJ gave great weight to the opinions of Dr. Roldan and Dr. Torigoe. Dr. Roldan and Dr. Torigoe reviewed Gold's records and determined that Gold's "mental impairments cause only mild limitations in activities of daily living; no limitation in social functioning; no restriction in maintaining concentration, persistence or pace; and no episodes of decompensation; therefore, are non-severe. *Id* at p. 23).

The ALJ identified several reasons for rejecting Gold's testimony. In discounting Plaintiff's assertions of disabling pain and functional limitations, the ALJ noted that her assertions were, "not supported by medical record signs, objective testing or the medical record as a whole," and that, "[i]n fact, the record reflects normal physical examinations and only mild findings on objective testing." (AR 26). Referencing her analysis of the medical record, the ALJ noted that physical examination in April 30, 2014, was normal (Exhibit 4F)," and that "treatment notes dated six months later on October 30, 2014, indicate[d] that [Plaintiff] was stable and doing well (Exhibit 5F, p. 8)." (AR 25; see AR 229, 242-43). The ALJ further noted that in February and April 2015, Plaintiff complained of, "tenderness on palpation down her cervical and lumbar spine and decreased range of motion of her entire spine," and experienced a syncope episode at a store where she reported feeling ,"dizzy and collapsed, hitting the side of her head

on the floor;" however, her symptoms resolved, "if she sits down," and that "physical examination and brain CT scan [were] normal (Exhibit 6F, pp. 19-71)." The ALJ also noted that, "[t]reatment records dated the following month on May 6, 2015, indicate that [Plaintiff] reported that she was doing well (Exhibit 7F, p. 11)." (AR 25).

Gold states that once medical evidence of an underlying medical impairment is produced, the ALJ could not discredit the testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d at 722 (9th Cir. 1998). Gold states that the ALJ failed to articulate any rationale sufficient to demonstrate Gold was anything other than credible. (ECF No. 18 at 11).

The court finds that the ALJ properly considered Gold's testimony. The ALJ considered Gold's testimony regarding her lack of work due to bulging disc in her neck, asthma and arthritis in her knees. The ALJ considered Gold's testimony regarding her daily activities and the medications that she is taking. (AR 22). The ALJ states in the RFC analysis that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The claimant's allegations of pain and functional limitation are not supported by medical record signs, objective testing or the medical record as a whole. In fact, the record reflects normal physical examinations and only mild findings on objective testing. (AR 26). The ALJ's decision is supported by substantial evidence. Therefore, the Court recommends denying Gold's motion for reversal and/or remand and granting the Commissioner's cross-motion to affirm.

ACCORDINGLY,

IT IS RECOMMENDED that Debra C. Gold's Motion for Reversal and/or Remand (ECF No. 18) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross-Motion to Affirm (ECF No. 19) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 7th day of January, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE